IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BALTIMORE CITY BOARD OF
SCHOOL COMMISSIONERS,

  *Plaintiff*,

  v.                                                  Civil Action No. ELH-14-02306

WARREN-EHRET COMPANY OF
MARYLAND, INC. *et al.*

  *Defendants*.

## MEMORANDUM OPINION

This construction case was initially filed in state court and was then removed to federal court, based on diversity of citizenship.  The question now is whether the court has subject matter jurisdiction based on diversity.

In or about April 2014, the Baltimore City Board of School Commissioners ("BCBSC") filed suit in the Circuit Court for Baltimore City against Warren-Ehret Company of Maryland, Inc. ("Warren-Ehret") and Westfield Insurance Company ("Westfield").  Several exhibits are appended to the Complaint.  Count One is a claim for breach of contract against Warren-Ehret, a Maryland corporation.  Count Two is a claim for breach of contract against Westfield, an Ohio corporation.

On July 18, 2014, Westfield timely removed the case to federal court.  In its Notice of Removal (ECF 1), Westfield asserted jurisdiction based on diversity of citizenship, pursuant to 28 U.S.C. § 1332.  *Id.* at ¶ 2.

## Factual and Procedural Background[1]

The suit arises from a contract between Warren-Ehret and BCBSC, entered on or about April 27, 2010, by which Warren-Ehret was to replace the roof at Harlem Park Middle School in Baltimore (the "Contract").  In support of its contractual undertaking, Warren-Ehret secured a performance and payment bond issued by Westfield on behalf of Warren-Ehret and for the benefit of BCBSC.  Under the terms of the Bond, Westfield, as Surety, became bound to pay BCBSC up to the amount of the bond ($1,959,580) in the event of any defaults, breaches, and/or failures by Warren-Ehret under the Contract.  *See* Plaintiff's Exhibit 1 (the "Contract"); Plaintiff's Exhibit 2 (the "Bond").  Moreover, under the terms of the Contract, Warren-Ehret was obligated to substantially complete its work by May 28, 2011.

According to BCBSC, Warren-Ehret defaulted under the Contract.  Therefore, BCBSC terminated the Contract, pursuant to a letter to Bradford Koch, Sr., President of Warren-Ehret, dated August 15, 2011.  *See* Plaintiff's Exhibit 3.  The termination was effective as of August 16, 2011.  As of the termination date, BCBSC had allegedly paid Warren-Ehret $1,808,346.46; was holding $95,176.24 as retainage; and $56,085.30 remained due under the Contract.

Plaintiff contends that the work was left unfinished by Warren-Ehret.  As a request, BCBSC retained Cam Construction Co., Inc. to complete the work, at a cost of almost $800,000.  In addition, because of alleged defects in the work of Warren-Ehret, Cam Construction had to perform additional remedial work, at a cost of over $250,000.  The work on the school roof was not completed until December 2012.

---

[1] The facts are drawn largely from the Complaint.

Based on these allegations, BCBSC made demand upon Westfield for payment under the Bond, in the amount of $903,049.86, as a result of Warren-Ehret's default and alleged breach of contract.  Westfield has not paid.

As noted, Westfield removed the case to federal court based on diversity.  In support of its claim of diversity, Westfield alleged that Warren-Ehret is a defunct Maryland corporation whose operations ceased as of the summer of 2011.

On July 21, 2014, the Court issued its "Standing Order Concerning Removal."  Westfield filed its response on August 1, 2014.  ECF 15.  Westfield reiterated that Warren-Ehret ceased all operations in the summer of 2011, and is not in good standing with the Maryland State Department of Assessments and Taxation ("SDAT").  *Id*. ¶ 3.  Further, it alleged that Warren-Ehret has no intention of reviving its operations.  *Id*.  And, Westfield alleged:  "Warren-Ehret was improperly joined in the instant matter in order to defeat diversity jurisdiction.  It is no longer operating . . . has no assets, no corporate headquarters, no business operations and is no longer in good standing with SDAT.  In fact, as Warren-Ehret's surety, Westfield is obligated by the terms of its bonds with Warren-Ehret, as principal, and BCBSC as obligee, to pay any sums properly determined to be due to BCBSC from Warren-Ehret. . . ."  *Id*. ¶ 6.

On August 18, 2014, the Court directed plaintiff to provide its views as to whether this Court has diversity jurisdiction.  *See* ECF 16.  Plaintiff responded on September 4, 2014 (ECF 17), disputing diversity jurisdiction, and seeking a remand to the Circuit Court for Baltimore City.  Plaintiff's response is supported by several exhibits.

In ECF 16, plaintiff asserted, *inter alia*, that it "was in the midst of its additional efforts to locate Mr. Koch, as well as formalizing its request . . . for alternative service upon Warren-Ehret, . . . when Westfield filed its Notice of Removal to this Court, therefore divesting the

Circuit Court of its power to act further."  ECF 17 at 5, ¶ 10.  Moreover, plaintiff insists that the parties are not completely diverse and that Warren-Ehret is a viable Maryland corporation, subject to suit.  *Id.* at 5 ¶¶ 11 and 12.  *See* Md. Code (2014 Repl. Vol.), Corporations and Associations Article § 2-103(2) (authorizing Maryland corporations to sue and be sued).

In addition, plaintiff argues that "forfeiture of a corporation's charter, given its significance, is quite formalized."  ECF 17 at 7, ¶ 7.  It cites § 3-503 of the Corporations and Associations Article of the Maryland Code (2014), which pertains to forfeiture of a corporate charter for nonpayment of taxes or failure to file the requisite reports.  Noting that "'Forfeiture' means that the legal existence of the entity has been relinquished," plaintiff maintains that "the charter of a corporation is not forfeited until SDAT issues a formal Proclamation declaring it to be so, which Proclamation cannot be issued until a series of prior steps have been completed." ECF 17 at 8-9, ¶ 17.  Plaintiff insists that, even if Warren-Ehret is not in good standing with the SDAT, its corporate charter has not been forfeited and thus Warren-Ehret remains "a viable Maryland corporation in legal existence, and, as such, there is not, and never was, diversity of citizenship. . . ."  *Id.* ¶ 18.

Alternatively, plaintiff argues that, even if Warren-Ehret's charter was forfeited, plaintiff would then be entitled to sue the Director-Trustees of the corporation, pursuant to § 3-515 of the Corporations and Associations Article.  *Id.* at 9-10, ¶ 21.  In particular, § 3-515 provides that, when the charter of a Maryland corporation has been forfeited, the Director-Trustees may sue or be sued in their own names as trustees or in the name of the corporation.  In either circumstance, suggests plaintiff, diversity would not be satisfied.

**Discussion**

As noted, the question here is whether this Court has subject matter jurisdiction, based on diversity of citizenship.

In *Home Buyers Warranty Corporation v. Hanna*, 750 F.3d 427, 432 (4th Cir. 2014), the Fourth Circuit said: "Fundamental to our federal system is the principle that '[f]ederal courts are courts of limited jurisdiction.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)).  Thus, a federal district court may only adjudicate a case if it possesses the "power authorized by Constitution and statute."  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation marks omitted).  As the Fourth Circuit stated in *Strawn v. AT & T Mobility LLC*, 530 F.3d 293, 296 (4th Cir. 2008), if a party seeks to proceed in federal court, it "must allege and, when challenged, must demonstrate the federal court's jurisdiction over the matter."  Indeed, "if Congress has not empowered the federal judiciary to hear a matter, then the case must be dismissed."  *Hanna,* 750 F.3d at 432.

Put another way, "[a] court is to presume … that a case lies outside its limited jurisdiction unless and until jurisdiction has been shown to be proper."  *United States v. Poole,* 531 F.3d 263, 274 (4th Cir. 2008) (citing *Kokkonen,* 511 U.S. at 377).  Moreover, a federal court has "an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend,* 559 U.S. 77, 94 (2010).

Congress has conferred jurisdiction on the federal courts in several ways.  To provide a federal forum for plaintiffs who seek to vindicate federal rights, Congress has conferred on the district courts original jurisdiction over civil actions that arise under the Constitution, laws, or treaties of the United States.  *Exxon Mobil Corp.*, 545 U.S. at 552; 28 U.S.C. § 1331.  *See also* U.S. Constitution Art. III, § 2 ("The Judicial Power shall extend to all Cases, in Law and Equity,

arising under this Constitution, the Laws of the United States, and Treaties made. . . .")
Moreover, 28 U.S.C. § 1367(a) grants district courts "supplemental jurisdiction over all other
claims that are so related to claims in the action within [the courts'] original jurisdiction that they
form part of the same case or controversy under Article III of the United States Constitution."

In addition, "Congress . . . has granted district courts original jurisdiction in civil actions
between citizens of different States, between U.S. citizens and foreign citizens, or by foreign
states against U.S. citizens," so long as the amount in controversy exceeds $75,000. *Exxon
Mobil Corp.*, 545 U.S. at 552; *see* 28 U.S.C. § 1332. This so-called diversity jurisdiction
"requires complete diversity among parties, meaning that the citizenship of every plaintiff must
be different from the citizenship of every defendant." *Cent. W. Virginia Energy Co., Inc. v.
Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011); *see Strawbridge v. Curtiss*, 7
U.S. 267 (1806).

"When a plaintiff files in state court a civil action over which the federal district courts
would have original jurisdiction based on diversity of citizenship, the defendant or defendants
may remove the action to federal court, 28 U.S.C. § 1441(a), provided that no defendant 'is a
citizen of the State in which such action is brought.'" *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68
(1996) (quoting 28 U.S.C. § 1441(b)). With respect to cases removed to federal court from state
court, 28 U.S.C. § 1447(c) provides: "If at any time before final judgment it appears that the
district court lacks subject matter jurisdiction, the case shall be remanded."

Westfield makes the questionable argument that Warren-Ehret was joined for the purpose
of defeating diversity jurisdiction. Westfield seems to overlook that Warren-Ehret was the
contractor whose work is at issue. Given the allegations in the suit, this is clearly not a case in

which an unscrupulous plaintiff improperly joined a non-diverse party in a fraudulent attempt to avoid a federal forum.  Joinder is entirely proper.

Both the federal and Maryland joinder rules permit joinder of defendants if "any right to relief is asserted against them . . . arising out of the same transaction [or] occurrence," and "any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20; *see* Md. Rule 3-212.  As the Maryland Court of Appeals has said, "'The core purpose of the rule is to permit a single trial of claims having a similar foundation or similar issues.'"  *Kennedy v. Lasting Paints, Inc.*, 404 Md. 427, 444, 947 A.2d 503, 513 (2008) (quoting Paul D. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary* 143–44 (3d ed. 2003)).  Both prongs of the joinder inquiry are easily satisfied here.  Indeed, if plaintiff had not sued Warren-Ehret, plaintiff might have failed to join an indispensable party.  *See* F.R. Civ. P. 19.

Given that Warren-Ehret was incorporated in Maryland, complete diversity is lacking.  Consequently, this Court lacks subject jurisdiction.  Two cases help to inform my view.

In *Athena Automotive, Inc. v. DiGregorio*, 166 F.3d 288 (4th Cir. 1999), a corporation incorporated in Georgia, which previously had conducted an automobile repair business in Maryland, filed suit in federal court against a Maryland resident and a Maryland corporation for alleged breach of contract and conversion, alleging diversity jurisdiction.  The Georgia corporation had ceased activities in Maryland three years prior to filing suit.  The Fourth Circuit considered whether the Georgia corporation remained a Maryland citizen for purposes of diversity jurisdiction.  Specifically, the appeal presented "the novel question" of the citizenship of "an inactive corporation" for diversity jurisdiction purposes.  166 F.3d at 290-91.

Based on the facts and circumstances, the Fourth Circuit concluded that, when the action commenced, the corporation was only a citizen of Georgia.   Thus, complete diversity of citizenship existed for purposes of the suit against two Maryland citizens.

As the Fourth Circuit observed in *DiGregorio*, "Diversity jurisdiction depends on the citizenship status of the parties at the time an action commences. . . ."  *Id*. at 290.  Of import here, the Fourth Circuit said, *id.*:  "Because jurisdiction attaches at the commencement of an action, even if the citizenship of the parties changes after the commencement of the action so as to destroy complete diversity, subject matter jurisdiction is not destroyed, and a federal court continues to have authority to decide the case."  (citing *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)).

In its analysis, the Fourth Circuit observed: "A corporation's business does not usually end with the abruptness of closing its doors.  Even when a corporation has ceased all operations and has become inactive, the continuing impact of its business in a given locale could linger on to an extent sufficient to give it a geographical identity there as its principal place of business." *Id*. at 291.  The Court continued:  "Indeed, a corporation's winding up of its business affairs may well constitute a significant activity and consume a considerable period of time."  *Id.*  And, the Fourth Circuit emphasized: "In determining a corporation's principal place of business, the determination must be made on a case by case basis," based on the date when the action was commenced. *Id.*

The Fourth Circuit reviewed decisions in other circuits that had considered a similar issue.  The Second Circuit concluded in *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 141 (2nd Cir. 1991), that an inactive corporation is a citizen of both the State of its incorporation and the State where "it last transacted business."  However, the

Fourth Circuit stated that it could not "categorically conclude that an inactive corporation is a citizen of its last place of business." *DiGregorio*, 166 F.3d at 291.  The Third Circuit concluded that an inactive corporation has no place of business and is therefore only a citizen of its state of incorporation.  *See Midlantic National Bank v. Hansen*, 48 F.3d 693, 696 (3rd Cir. 1995).  And, the Fifth Circuit determined in *Harris v. Black Clawson Co.*, 961 F.2d 547, 551 (5th Cir. 1992), that a corporation that had been inactive for a lengthy period of time is a citizen only where it is incorporated.  The Fourth Circuit rejected the "bright-line" rule set forth in *Hansen*, *i.e.*, that a corporation is a citizen only of its state of incorporation if it was inactive at the commencement date of the litigation.  DiGregorio, 166 F.3d at 291.

Using a "'facts and circumstances' approach similar to the one utilized by the Fifth Circuit in *Harris*," the Fourth Circuit concluded that, as of the date that Athena filed suit against the Maryland defendants, it was an out-of-state citizen for diversity purposes.  *Id*. at 292.  The Court pointed to the fact that Athena had "done nothing in Maryland for approximately three years" prior to the filing of suit and "[a]ny local impact of its business had long dissipated."  *Id.*  However, the plaintiff "was unquestionably a citizen of Georgia, its state of incorporation. . . ."  *Id.* at 292.

In *Webber v. General Motors Corporation*, JFM-00-1397, 2000 WL 1828254 (D. Md. Nov. 29, 2000), a products liability action, the plaintiffs were citizens of Maryland.  They sued General Motors Corporation and Team Chevrolet in a Maryland court.  Team Chevrolet was incorporated in Maryland but, at the time of suit, its charter had been forfeited.  As a result, plaintiff sued the person who became a trustee of the corporate assets at the time of the forfeiture of the charter, and another director-trustee, both in the name of the corporation.  Because the

director-trustees were themselves citizens of Florida, General Motors removed the case to federal court based on diversity of jurisdiction.

The District Court (Motz, J.) considered whether the director-trustees' citizenship governed for purposes of diversity or, instead, whether Team Chevrolet's prior status as a Maryland corporation defeated diversity.  Judge Motz concluded that the trustees were only nominal parties to the suit, with no exposure to personal liability, and were instead a mere "conduit through which the lawsuit is being passed for the purpose of triggering any insurance coverage that Team Chevrolet may have maintained…." *Id.* at *1.  Therefore, Team Chevrolet's prior status as a Maryland corporation defeated diversity.  *Id.*

Under 28 U.S.C. § 1332(c)(1), the citizenship of a corporation for diversity purposes is based on the state in which it has been incorporated, or where it has its principal place of business.  In this case, whether or not Warren-Ehret is active, it is undisputed that Warren-Ehret incorporated in the State of Maryland.  Even if Warren-Ehret is now a defunct corporation, as Westfield claims, the cases discussed above suggest that, at the very least, it is a citizen of the State of its incorporation for diversity purposes.  That State is Maryland.

Moreover, plaintiff has submitted a certified SDAT record showing that, as of July 21, 2014, Warren-Ehret was not in good standing for failure to file Form 01 for 2013 and 2014.  *See* plaintiff's Exhibit 7, ECF 17-1 at 19, 20.  The record also shows that, under Maryland law, SDAT is the custodian of records relating to forfeiture.  *Id.*  There is no indication that Warren-Ehret's charter had been forfeited as of the date when suit was filed in this case.  Thus, Warren-Ehret remained a viable Maryland corporation for diversity purposes when suit was filed.

As a result, this Court lacks diversity jurisdiction.  Therefore, the case shall be remanded to the Circuit Court for Baltimore City.  An Order follows.

Date:  November 12, 2014                            /s/
                                   Ellen Lipton Hollander
                                   United States District Judge